# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DEBBIE MILLWOOD,

        Plaintiff,

        v.

CHRISTOPHER LABNO, et al.,

        Defendants.

CAUSE NO.: 2:22-CV-212-TLS-APR

## OPINION AND ORDER

This matter is before the Court on Defendant Whitney Williams' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) [ECF No. 21], filed on behalf of both Defendant Whitney Williams and the Indiana Department of Child Services ("IDCS"); Defendants Whitney Williams and Indiana Department of Child Protective Services' Motion for Ruling on Previously Filed Motion to Dismiss [ECF No. 40]; and Defendant Christopher Labno's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim or in the Alternative Motion for Summary Judgment [ECF No. 49]. The motion to dismiss filed by Defendants Whitney Williams and IDCS has been fully briefed. The Plaintiff has not responded to Defendant Labno's motion, and the time to do so has passed. For the reasons set forth below, the Court grants in part and denies in part Defendants Whitney Williams' and IDCS's motion to dismiss, and the Court grants Defendant Labno's motion to dismiss.

## PROCEDURAL HISTORY

The Plaintiff filed a Complaint on November 1, 2020, in the United States District Court for the Northern District of Illinois, against Christopher Labno, individually and in his capacity as an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; Two Unknown Named

Agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives; IDCS; Ms. First Name Unknown Williams # 1[1]; individually and in her capacity as an agent and employee of IDCS; Ms. First Name Unknown Williams #2, individually and in her capacity as an agent and employee of IDCS; One John Doe Police Officer; and One Unknown Named State Law Enforcement Agency. Compl. at p. 1, ECF No. 1.

The Plaintiff asserts claims against all Defendants for unlawful restraint and detention and seizure of person (Count I), unreasonable detention and seizure of person (Count II), Equal Protection and Due Process violation (Count III), false imprisonment (Count IV), intentional infliction of emotional distress (Count V), and respondeat superior (Count X). *Id.* at ¶¶ 22–26, 30. The Plaintiff asserts claims specifically against Defendants Whitney Williams and Williams #2 for unlawful restraint and detention and seizure of person (Count VI), unreasonable detention and seizure of person (Count VII), Equal Protection and Due process violation (Count VIII), and false imprisonment (Count IX). *Id.* ¶¶ 27–29. The Plaintiff requests compensatory damages, punitive damages, attorney's fees, and further relief as the Court deems just and equitable. *Id.* at p. 10.

On January 28, 2022, Defendant Labno moved to dismiss for improper venue. ECF No. 24. On March 10, 2022, the Plaintiff moved to transfer the case to this Court. ECF No. 31. On July 7, 2022, the Northern District of Illinois denied Defendant Labno's motion to dismiss for improper venue and transferred the case to this Court. ECF No. 37.

Prior to the case being transferred to this Court, Defendant Whitney Williams and IDCS filed the present Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), on January 14, 2022,. ECF No. 21. The Plaintiff responded on March 9, 2022 [ECF

---

[1] The attorney for Defendant Ms. First Name Unknown Williams #1 later advised the Court that the Defendant's first name is Whitney. *See* ECF No. 52.

No. 29], and Defendants Whitney Williams and IDCS replied on March 21, 2022 [ECF No. 32]. On July 29, 2022, after the case was transferred, Defendants Whitney Williams and IDCS filed a new motion requesting a ruling on their previously filed motion to dismiss. ECF No. 40.

On October 11, 2022, Defendant Labno filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim or in the Alternative Motion for Summary Judgment. ECF No. 49. The Plaintiff did not respond. The Court rules on each of the motions below.

## FACTUAL BACKGROUND

The following allegations are taken from the Plaintiff's Complaint [ECF No. 1]. On October 31, 2018, the Plaintiff, Debbie Millwood, was asked by a representative of IDCS to visit the IDCS offices in Gary, Indiana. Compl. ¶ 11. After the Plaintiff advised the representative that she could not attend that day, the representative told the Plaintiff that if she did not visit the IDCS offices the next day, IDCS would take away the Plaintiff's three minor children. *Id.*

The next day, the Plaintiff visited the IDPCS offices and met with Defendant Whitney Williams and her supervisor, whose last name is also Williams but whose first name is unknown. *Id.* The Plaintiff was confused why she had to meet at the IDCS offices because several days earlier, an IDCS representative met with the Plaintiff at her house and advised the Plaintiff that "everything was in order" regarding her children. *Id.*

While meeting with Defendant Whitney Williams and her supervisor on November 1, 2018, the Plaintiff was prompted to sign the papers she previously signed when the IDCS representative was at her home. *Id.* The Plaintiff advised the supervisor that she had doctor's notes in her car for her children's school absences and that she told the IDCS representative this days earlier at her home. *Id.* The supervisor directed the Plaintiff to retrieve the notes from her car. *Id.*

As the Plaintiff attempted to leave the room to get the doctor's notes, two men— Defendant Labno and a second officer, approached the doorway and blocked her exit. *Id.* ¶ 12. Defendant Labno ordered the Plaintiff back into the room and told her that he and the second officer had questions she must answer. *Id.* The second officer walked further into the room, and Defendant Labno closed the door, placed a chair sideways against it, and sat on the chair, blocking the only door and preventing the Plaintiff from leaving. *Id.*

Over the next sixty-plus minutes, Defendant Labno continuously demanded that the Plaintiff "needed to work with them" against her uncle, Terry Ferguson, who Defendant Labno had arrested days earlier, or they would take away the Plaintiff's children. *Id.* ¶ 13. Defendant Labno claimed that Ferguson had stolen the Plaintiff's money. *Id.* The two agents kept telling the Plaintiff that she was a victim and that Ferguson stole from her. *Id.* Despite the Plaintiff growing visibly more shaken and distraught, the other Defendants did nothing to stop Defendant Labno. *Id.* Defendant Labno questioned, "If your uncle is helping you, why are you in a CPS building on the verge of losing your kids? You have serious issues in the head and you have PTSD from what happened to you." *Id.* The agents attempted to suborn perjury from the Plaintiff by stating they could get her a bunch of money and have it put into trusts for her children. *Id.* The Plaintiff denied the offers and continued asking to leave. *Id.*

In the Plaintiff's attempt to end her captivity and abuse, she stated that she would think about the agents' offer. *Id.* ¶ 14. Defendant Labno demanded that the Plaintiff call him by mid-afternoon and strongly warned her to work with them. *Id.* He warned the Plaintiff not to go straight home because they were going to her house to talk to her father. *Id.* They also warned her not to call her uncle, Terry Ferguson, when she got outside. *Id.* Throughout the meeting, Defendant Whitney Williams and her supervisor let the Plaintiff believe that she could lose her children if she failed to perjure herself and did not cooperate with the agents. *Id.* ¶ 16. Neither

Defendant Whitney Williams nor her supervisor contradicted Defendant Labno's threats that the Plaintiff would lose her children. *Id.*

Eventually, the Plaintiff was allowed to leave. *Id.* ¶ 15. When the Plaintiff left, she immediately vomited and cried hysterically. *Id.* She was shaken, and her head hurt; so instead of driving home she drove a short distance to her sister's home and laid down to calm herself. *Id.* The Plaintiff alleges that she suffered damages including loss of liberty; invasion of privacy; substantial emotional distress and harm; loss of reputation; physical harm caused by the emotional distress, including difficulty sleeping, nightmares, difficulty focusing on daily tasks, and changed behavior in work practices; and costs and expenses of bringing this action. *Id.* ¶ 19.

## DISCUSSION

### A.     Defendant Whitney Williams' Motion to Dismiss

Defendants Whitney Williams and IDCS move to dismiss the claims brought against Defendant Whitney Williams in her official capacity and against IDCS, arguing they are entitled to immunity under the Eleventh Amendment to the United States Constitution. Defendant Whitney Williams also moves to dismiss the claims brought against her in her individual capacity, arguing that the Court lacks personal jurisdiction over her.

*1.     Immunity*

The Eleventh Amendment "expressly bars suits against state governments . . . by citizens against their own state government." *Meadows v. Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "The amendment specifically bars official-capacity suits against state officials because the state is the real party in interest in such suits." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). The United States Supreme Court has repeatedly stated "that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given." *In*

*re State of New York*, 256 U.S. 490, 497 (1921); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 99 n.8 (1984) (reasoning that the Eleventh Amendment "deprives federal courts of any jurisdiction to entertain" suits against states).

Defendants Whitney Williams and IDCS argue the Eleventh Amendment provides them with immunity from the Plaintiff's claims against the IDCS and against Defendant Whitney Williams in her official capacity, as an employee of IDCS. The Plaintiff responds by invoking a provision of the Federal Tort Claims Act, 28 U.S.C. § 1346 ("FTCA"). The Plaintiff argues that the Defendants are not immune from suit because the Federal Tort Claims Act waives immunity and the Defendants are not exempt from that waiver.

The well-settled interpretation of the Eleventh Amendment makes it clear that the Court does not have jurisdiction to hear the Plaintiff's claims against Defendant Whitney Williams in her official capacity nor against IDCS because the state of Indiana is the real party in interest. The Plaintiff's response fails because the Federal Tort Claims Act is not applicable here: Defendant Whitney Williams is an employee of the state of Indiana, not the federal government, and IDCS is a state agency, not an agency of the federal government. *See* 28 U.S.C. § 1346(a) (granting federal district courts original jurisdiction over civil claims "against the United States"). Therefore, the Court grants Defendants Whitney Williams' and IDCS' motion to dismiss as to the claims against Defendant Whitney Williams in her official capacity and as to all claims against IDCS.[2]

---

[2] The Plaintiff's Complaint brings claims against a second Defendant Williams whose first name is unknown. *See* ECF No. 1. It appears from the record that the unnamed Williams has not been served, and no appearance has been entered on her behalf.

2.    *Personal Jurisdiction*

Prior to the transfer of this case from the Northern District of Illinois to the Northern District of Indiana on July 21, 2022, *see* ECF No. 38, Defendant Whitney Williams argued that the Northern District of Illinois lacked personal jurisdiction over her because she is, and was at all relevant times, domiciled in Indiana. Defendant Whitney Williams' argument is moot now that the case was transferred and is pending in the Northern District of Indiana. This Court may exercise general jurisdiction over Defendant Whitney Williams because she is domiciled in Indiana. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (explaining that general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."). The Court could also exercise specific jurisdiction over Defendant Whitney Williams because the events at issue took place in this district. *See Goodyear*, 564 U.S. at 919 ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum . . . ." (internal quotation marks and citations omitted)). The Court thus has jurisdiction to hear the Plaintiff's claims against Defendant Whitney Williams in her individual capacity and denies the motion to dismiss as to those claims.

**B.    Defendant Labno's Motion to Dismiss**

The Plaintiff sues Defendant Labno both individually and in his official capacity as an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. As explained below, the claims against Defendant Labno in his official capacity and the state law claims brought against him in his individual capacity must be dismissed for failure to comply with the Federal Tort Claims Act. The constitutional claims against Defendant Labno in his individual capacity must

be dismissed under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny.

1.   *Claims Against Defendant Labno in His Official Capacity and State Law Claims Against Defendant Labno in His Individual Capacity*

Federal employees are entitled to "absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). In cases brought against federal employees "acting within the course and scope of [their] employment, the suit is deemed to be against the United States." *Chapman v. U.S. Marshal for N. Dist. of Ill.*, 584 F. Supp. 2d 1083, 1088 (N.D. Ill. 2008) (citing *Foster v. Hill*, 497 F.3d 695, 696 (7th Cir. 2007)); *see Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007) ("An official capacity suit is tantamount to a claim against the government entity itself."); *see also Kratville v. Runyon*, No. 92 C 7970, 1992 WL 394696, at *1 (N.D. Ill. Dec. 29, 1992) (dismissing a claim for failure to comply with the FTCA because the claim would trigger a certification that the federal agent being sued was acting within the scope of his employment). The United States is immune from suit unless it consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976); *see also Williams v. Fleming*, 597 F.3d 820, 822 (7th Cir. 2010) ("Generally, an individual may not sue the United States for tortious conduct committed by the government or its agents." (citing *United States v. Navajo Nation*, 556 U.S. 287, 288 (2009))), *abrogated on other grounds by Simmons v. Himmelreich*, 578 U.S. 621 (2016).

The FTCA includes a limited waiver of sovereign immunity, thereby allowing litigants to sue the United States in certain circumstances. *Erxleben v. United States*, 668 F.2d 268, 270 (7th Cir. 2001) ("The Federal Tort Claims Act, 28 U.S.C. s 2671 et seq., is a congressional waiver of sovereign immunity." (citing *United States v. Kubrick*, 444 U.S. 111 (1979))), *abrogated on*

*other grounds recognized in Kanar v. United States*, 118 F.3d 527, 531 (7th Cir. 1997). Although

the FTCA waives sovereign immunity, it "does mandate that, as a prerequisite to filing a suit

against the United States under the Act, a claimant must present notice of his claim to the

appropriate federal agency." *Id.* at 270 (citing 28 U.S.C. § 2675(a)). The Seventh Circuit has

explained that presenting one's claim to the appropriate federal agency, the "administrative

exhaustion requirement," is a "condition precedent to the plaintiff's ability to prevail." *Smoke*

*Shop, LLC v. United States*, 761 F.3d 779, 786–87 (7th Cir. 2014) (citing *Kanar*, 118 F.3d at

530); *see Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012) ("So the

plaintiff did fail to exhaust his administrative remedies, . . . and this alone should bar his suit,

since the Tort Claims Act requires exhaustion of administrative remedies as a prerequisite to

suit.")..

Here, the claims against Defendant Labno constitute claims against the United States. *See*

*Chapman*, 584 F. Supp. 2d at 1088; *Guzman*, 495 F.3d at 859. Therefore, the proper defendant is

the United States, not Defendant Labno, and the Plaintiff has not named the United States as a

defendant. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (acknowledging that the United

States "would be the proper defendant for tort claims involving acts of the named officials within

the scope of their employment"); 28 U.S.C. § 2679(d)(1).

As tort claims brought against the United States, the Plaintiff's claims are subject to the

FTCA's limited waiver of sovereign immunity. The Plaintiff does not allege that she has

"present[ed] notice of [her] claim to the appropriate federal agency" as required by the FTCA,

*Erxleben*, 668 F.2d at 270, nor does she dispute the affidavit Defendant Labno filed with his

motion in which the Associate Chief Counsel of the Bureau of Alcohol, Tobacco, Firearms, and

Explosives represents that she "caused to be searched the Office of Chief Counsel management

system and found no record of an administrative tort claim presented by or on behalf of [the

Plaintiff]," *see* ECF No. 50-1 ¶ 5. Thus, the Plaintiff has not exhausted her administrative remedies, and the Court grants Defendant Labno's motion to dismiss the claims against him in his official capacity and the state law claims against him in his individual capacity. *See Erxleben*, 668 F.2d at 271 ("[I]f the appellant's claim form as submitted was not sufficient as a presentation of his claim under section 2675(a), . . . the district court's dismissal is proper."); *Palay*, 349 F.3d at 425 ("A plaintiff's failure to exhaust administrative remedies before he brings suit mandates dismissal of the claim." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993))).

2.      *Constitutional Claims Against Defendant Labno in His Individual Capacity*

There are limited circumstances in which a plaintiff may assert a cause of action against a federal agent in his individual capacity. Prior to the Supreme Court's decision in *Bivens*, plaintiffs whose constitutional rights were violated by agents of the federal government did not have a specific damages remedy. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) ("[I]n the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government."). Then, in *Bivens*, the Supreme Court permitted a damages remedy for injuries the plaintiff suffered when federal agents conducted a search and seizure that violated the Fourth Amendment. 403 U.S. at 389, 397. Now, "[a] *Bivens* claim can be brought as an allegation that a constitutional injury arose out of the actions of federal agents." *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002).

Although *Bivens* recognized an implied damages remedy against federal officials for alleged constitutional violations, *see Snowden v. Henning*, 72 F.4th 237, 241 (7th Cir. 2023) (acknowledging that *Bivens* recognized an "implied" damages remedy), there have only been three "instances in which the Court has approved of an implied damages remedy under the Constitution itself," *Abbasi*, 582 U.S. at 131. In *Abbasi*, the Supreme Court summarized the "three *Bivens* claims the Court has approved in the past: a claim against FBI agents for

handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmates asthma." *Id.* at 140; *see Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court made clear "that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The Supreme Court has provided a two-step framework for determining whether a *Bivens* claim may proceed. *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). The Seventh Circuit explained the test as follows:

> The first step asks whether the plaintiff's case presents "a new *Bivens* context." *Id.* at 1803 (quoting *Abbasi*, 582 U.S. at 139, 137 S. Ct. 1843). If it does not, then the plaintiff's claim may proceed. But if the claim arises in a new context, then the court must consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Abbasi*, 582 U.S. at 136, 137 S. Ct. 1843). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernández*, 140 S. Ct. at 743).

*Snowden*, 72 F.4th at 242 (citing *Egbert*, 142 S. Ct. at 1802).

The Plaintiff is suing Defendant Labno in his individual capacity for multiple alleged constitutional violations, including unlawful restraint, detention, and seizure of a person (Count I), unreasonable detention and seizure of a person (Count II), and violation of the Equal Protection and Due Process clauses (Count III). Each of these counts arise from the allegations that Defendant Labno, along with another federal agent, ordered the Plaintiff into a room, blocked the exit, and questioned the Plaintiff for sixty-plus minutes against her will. Compl. ¶¶ 12–15.

Under the first step required to evaluate a *Bivens* claim, the Court must determine if the Plaintiff's claim presents a *Bivens* claim in a new context. *See Snowden*, 72 F.4th at 242. The Supreme Court "has urged 'caution' before 'extending *Bivens* remedies into any new context.'"

*Abbasi*, 582 U.S. at 136 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.* at 139. The Supreme Court elaborated,

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40.

In *Bivens*, the plaintiff brought a Fourth Amendment claim for unreasonable search and seizure after federal agents entered his apartment and arrested him in front of his wife and children without probable cause, without a warrant, and using unreasonable force. 403 U.S. at 389. Here, the Plaintiff has brought a Fourth Amendment claim based on federal agents ordering her into a room, blocking the exit, and questioning her for sixty-plus minutes against her will.

The fact that both cases involve Fourth Amendment claims is not dispositive. *See Blake v. Bradley*, No. 20 C 5856, 2022 WL 865843, at *3 (N.D. Ill. Mar. 23, 2022) ("Thus, although both cases involve Fourth Amendment claims, that alone is not dispositive."). For example, even though the Supreme Court extended *Bivens* to a Fifth Amendment unlawful termination claim against a congressional employee in *Davis*, it declined to extent *Bivens* to a Fifth Amendment claim against a military service member in *Chappell v. Wallace*, 462 U.S. 296, 305 (1983). *See also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause."). In *Abbasi*, the plaintiffs brought "detention policy claims challeng[ing] the confinement conditions imposed on illegal aliens pursuant to a high-level executive policy created in the wake a major terrorist attack on American soil." 582 U.S. at 140. Considering the

claims at that level of generality, the Supreme Court found that the claims "b[ore] little resemblance to the three *Bivens* claims the Court has approved in the past." *Id.*

In the instant case, the Plaintiff complains that two ATF agents seized her and questioned her against her will for sixty-plus minutes before allowing her to leave. Although *Bivens* also involved an unreasonable search and seizure claim, *Bivens* involved a search of the plaintiff's apartment and an arrest in front of his family, all without probable cause or a warrant. 403 U.S. at 389. Further, *Davis* involved a Fifth Amendment discrimination claim against a congressional employee, 442 U.S. 228, and *Carlson* involved an Eighth Amendment claim against prison officials, 446 U.S. 14. The instant constitutional claims are meaningfully different from the claims in *Bivens*, *Davis*, and *Carlson*, and the Court therefore grants Defendant Labno's motion to dismiss the constitutional claims (Counts I, II, and III) brought against him in his individual capacity. *See Economan v. Cockrell*, No. 1:20-CV-32, 2020 WL 6874134, at *24–26 (N.D. Ind. Nov. 23, 2020) (declining to extend *Bivens* to an unlawful search and seizure claim in which the plaintiffs alleged that federal agents submitted false evidence in order to seize the plaintiffs' assets).

## CONCLUSION

Based on the above, the Court GRANTS in part and DENIES in part Defendant Whitney Williams' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) [ECF No. 21], granting the motion as to the claims against Defendant Whitney Williams in her official capacity and as to all claims against the Indiana Department of Child Services, and denying the motion as to the claims against Defendant Whitney Williams in her individual capacity.[3] As a result, the Court DENIES as moot Defendants Whitney Williams and Indiana

---

[3] The Court notes that claims remain against the two Defendant Williamses for unlawful restraint and detention and seizure of person, unreasonable detention and seizure of person, Equal Protection and Due

Department of Child Protective Services' Motion for Ruling on Previously Filed Motion to Dismiss [ECF No. 40]. Finally, the Court GRANTS Defendant Christopher Labno's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim or in the Alternative Motion for Summary Judgment [ECF No. 49], granting the motion as to all claims against Defendant Labno. As a result, the Court DISMISSES Defendants Indiana Department of Child Services and Christopher Labno.

SO ORDERED on September 13, 2023.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

Process violation, false imprisonment, intentional infliction of emotional distress, and respondeat superior. The only allegations stated against the two Defendant Williamses in the Complaint is that they "were complicit" for allowing the Plaintiff to believe she could "lose her children if she failed to perjure herself and did not cooperate with Labno and the other law enforcement agent," and that "neither Williams contradicted Labno's threats that Plaintiff would lose her children." Compl. ¶ 16. Additionally, the Complaint does not contain specific allegations about the conduct of the other defendants, none of whom are identified by name.